**THE INTERNATIONAL ISLAMIC COMMUNITY OF MASJID BAYTULKHALIQ, INC., IMAM ABDALLAH YASIN and IMAM ABDALLAH YASIN as father next of kin for MUHAMMAD YASMEEN and ASMAA YASIN, his minor children, AMINAH BAYYAN YASIN and AMINAH BAYYAN YASIN as next of kin for her minor granddaughter TAHIRAH BELL, JANNAH CARTER YASIN and JANNAH CARTER YASIN as mother next of kin for ANITA, ERNEST, HILDA and CARIL MCCURDY, her minor children, Plaintiffs**

**v.**

**UNITED STATES OF AMERICA and DIRECTOR OF THE DRUG ENFORCEMENT ADMINISTRATION, DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, THE GOVERNMENT OF THE VIRGIN ISLANDS, MILTON FRETT, COMMISSIONER OF PUBLIC SAFETY CARL JACKSON, DIRECTOR OF NARCOTICS STRIKE FORCE, LAW ENFORCEMENT PLANNING COMMISSION, GAYLORD SPRAUVE, DRUG POLICY ADVISOR TO THE GOVERNOR, and ALL FEDERAL AND VIRGIN ISLANDS LAW ENFORCEMENT OFFICERS WHO PARTICIPATED IN THE RAID INDIVIDUALLY, Defendants**

Civ. No. 1993-166

District Court of the Virgin Islands

Div. of St. Croix

August 28, 1997

289

290

292

Jannah Carter Yasin, Esq., St. Croix, U.S.V.I., *for Plaintiffs*

Imam Abdallah Yasin, St. Croix, U.S.V.I., *Plaintiff Pro se*

Michael A. Humphreys, Esq., St. Croix, U.S.V.I., *for Defendant United States and Individual Federal Defendants*

W. Bartlett Ary, Esq., St. Croix, U.S.V.I., *for Defendant Virgin Islands and Individual Territorial Defendants*

MOORE, *Chief Judge*

## MEMORANDUM

Defendant the United States of America and the other federal defendants have filed a motion for the entry of summary judgment. The Government of the Virgin Islands and the other territorial defendants have also filed a motion to dismiss, for which the Court gave all parties notice that it would be treated as a motion for summary judgment. For the reasons set forth in this Memorandum, summary judgment will be granted in favor of all defendants, and the case will be closed.

### I. Facts

In July 1989, Inspector Rene Zapata of the Bureau of Alcohol, Tobacco and Firearms ["ATF"] conducted a compliance inspection of the firearms business of plaintiff Imam Yasin, a federal firearms licensee.[1] During the inspection, Inspector Zapata learned that Imam Yasin had not been issued a local business license, nor had he maintained a business premises,[2] and recommended that Yasin's federal firearms license ["FFL"] not be renewed.

Based on Zapata's investigation, Yasin's application for renewal of his FFL was denied by ATF on January 4, 1990. On the same

---

[1] Such administrative inspections are authorized by 18 U.S.C. § 923(g)(1)(B).

[2] The establishment of maintaining a premises for conducting business is a requirement pursuant to 18 U.S.C. § 923(d)(1)(E).

date, Imam Yasin was advised of his right to appeal this preliminary administrative ruling, which he did. During this appeals process, Yasin furnished ATF with a local business license, which caused ATF to reverse its decision and renew Yasin's FFL on May 25, 1990.

On or about August 11, 1992, Inspector Zapata conducted another compliance investigation of Yasin's firearms business. This inspection had been requested by ATF Special Agent Michael C. Huckaby after Huckaby traced a firearm used in a crime to Yasin's firearms business. This inspection disclosed no violations and Zapata recommended no further action.

On November 13, 1992, Willie Bourda, a supervisory agent with the Narcotic Strike Force ["NSF"], prepared an affidavit in support of an application for a search warrant stating that there was probable cause to believe that illegal firearms and narcotics were being housed at a residence located in Estate Montpelier, Frederiksted, St. Croix. A search warrant based on this affidavit was signed by the United States Magistrate Judge, on November 13, 1992.

On November 14, 1992, at approximately 5:30 a.m., Agent Michael C. Huckaby, the senior ATF Agent assigned to the Virgin Islands, attended the pre-search briefing at the Virgin Islands Police Department Canine Office. In attendance were members of the NSF and the Virgin Islands Police Department ["VIPD"]. No representative from the United States Attorney's Office or the Drug Enforcement Administration ["DEA"] was present at the meeting. Mr. Huckaby was the sole federal officer present.

At the meeting, Agent Huckaby learned that the targeted location was the premises of an individual holding an FFL pursuant to the Gun Control Act of 1968.[3] In order for Agent Huckaby to participate in a search of FFL premises, he would have to obtain supervisory approval. Due to the short time allowed, Huckaby declined to participate in the search in any way.[4]

---

[3] Pub.L. 90-618, 82 Stat. 1213 (codified as amended in scattered sections of 18 U.S.C. and 26 U.S.C.).

[4] Discovery included Huckaby's deposition. The plaintiffs have presented no meaningful evidence based upon this deposition.

On November 14, 1992, at approximately 6:30 a.m., the NSF and VIPD executed the search warrant on plaintiff Imam Abdallah Yasin's home at 34 C Estate Orange Grove, Frederiksted, St. Croix. The affidavit and warrant described the premises to be searched as a cream colored one-story house located in Estate Montpellier, Fredriksted, St. Croix. The name of the persons residing at the address did not appear on the warrant. The stated purpose of the warrant was to search and seize, among other things, illicit narcotics and firearms.

At the commencement of the search, Plaintiff Imam Abdallah Yasin was present when the officers began the search and told them that his home was located in Orange Grove, Fredriksted, not in Montpellier. The officers nevertheless continued the search. Over his objections, a dog was brought into plaintiff's home in violation of his religious principles. The search took place over a period of one and one-half hours. No illicit narcotics or firearms were found. No charges were brought against plaintiffs for firearms, narcotics or any other violation of the law.

On February 12, 1993, the plaintiffs, each of whom resided at the house at the time it was searched, filed three administrative claims under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. § 2671-2680, alleging their premises were unlawfully searched, naming the ATF and the DEA as alleged wrongdoers. Pursuant to 28 C.F.R. § 14.2(b)(2), ATF was designated the lead agency to make a final determination of these claims. By a letter dated April 29, 1993, plaintiffs were notified that ATF and DEA were not involved in any manner in the planning or execution of the search warrant that occurred at their residence on November 14, 1992, and that their claims would therefore be denied.

Plaintiffs filed a complaint in this Court on May 11, 1993, which was later amended on June 13, 1994, both of which named as defendants the United States, Thomas A. Constantine, Director of the DEA, in his official and individual capacities, John W. McGraw, Director of ATF, in his official and individual capacities, and federal law enforcement officers who participated in the raid: Michael Huckaby, Michael Alston, Rafael Martinez, Rene Zapata, all in their official and individual capacities [collectively "the federal defendants"].

■ Plaintiffs have also named as defendants the Government of the Virgin Islands and Milton Frett, Commissioner of the Department of Public Safety, in his official and individual capacities, Carl Jackson, Director of the Narcotics Strike Force, in his official and individual capacities, Gaylord Sprauve, Drug Policy Advisor to the Governor, in his official and individual capacities, and Virgin Islands law enforcement officers who participated in the raid: Willie Bourda, Robert Ellison, Achille Tyson, George Osborn, Libertad Velasquez, David Patterson, and others, all in their official and individual capacities, as well as an NSF confidential informant, in his official and individual capacities [collectively the "territorial defendants"].[5]

The United States filed a motion on behalf of all federal defendants to be dropped from the case or, in the alternative, a motion to dismiss the complaint or for entry of summary judgment [the "federal motion"]. The Government of the Virgin Islands and the other territorial defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted [the "territorial motion"]. The Court informed the parties that the territorial motion would be treated as a motion for summary judgment. Argument was held on the territorial motion on January 29, 1997. Both the federal defendants' and the territorial defendants' motions are before the Court.

## II. Discussion

### A. Plaintiff's Complaint

■ Plaintiffs filed their first complaint on May 11, 1993. They filed their first amended complaint on June 13, 1994. The amended complaint was filed pursuant to an order by the Court requiring the plaintiffs to specify clearly the particular legal causes of action against each defendant. To determine the nature and scope of the

---

[5]The Court is baffled as to the "official capacity" and the "individual capacity" of a confidential informant, and can find no legal basis for suing a confidential informant in any capacity whatsoever. Accordingly, any claims against the Narcotic Strike Force's confidential informant must be dismissed for failure to state a claim upon which relief may be granted.

claims contained in these complaints is truly a Sisyphean labor.[6] Each of the two counts of the amended complaint names all of the federal and territorial defendants. Count I is for "Malicious Prosecution (Wrongful Search)," while Count II is a "Civil Action for Deprivation of Rights." The amended complaint states that the action in Count I arises under the Federal Tort Claims Act[7] and the Virgin Islands Tort Claims Act ["VITCA"], 33 V.I.C. §§ 3401-3411.[8] Plaintiffs state that Count II arises under 42 U.S.C. § 1983, the Fourth, Tenth[9] and Fourteenth Amendments of the United States

---

[6] Imam Abdallah Yasin has entered an appearance pro se. Attorney Jannah Carter Yasin, wife of Imam Yasin, is the attorney of record for all other plaintiffs. The Court was presented with the dilemma of what standard to employ when evaluating the pleadings filed by these individuals. It is an accepted rule that the pleadings of a pro se party are to be construed more liberally than pleadings filed by attorneys. *See, e.g., Bong v. MacDougall,* 454 U.S. 364, 70 L. Ed. 2d 551, 102 S. Ct. 700 (1982); *Haines v. Kerner,* 404 U.S. 519, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972).

Although Attorney Yasin and Imam Yasin ostensibly represent distinct parties, their pleadings are supportive and collaborative and not in contrast. Moreover, it would be virtually impossible to attempt to apply different standards to the separate pleadings filed by Attorney Yasin and Imam Yasin. Accordingly, the Court will uniformly apply the more exacting, liberal pro se standard to all pleadings filed by plaintiffs.

[7] The Federal Tort Claims Act ["FTCA"], 28 U.S.C. §§ 2671-2680, waives the immunity of the Government of the United States for injury, death or loss of property in certain circumstances. However, for the purposes of the territorial defendants' motion, the FTCA is irrelevant, as it cannot purport to waive the immunity of territorial officers or the Virgin Islands Government. Accordingly, for the purposes of territorial defendants' motion, the Court will only consider claims under the Virgin Islands Tort Claims Act.

[8] The Virgin Islands Tort Claims Act ["VITCA"], specifically 33 V.I.C. § 3408, waives the immunity of the Government of the Virgin Islands for injury, death or loss of property in certain circumstances. However, for the purposes of the federal defendants' motion, the VITCA is irrelevant, as it cannot purport to waive the immunity of federal officers or the United States Government. Accordingly, for the purposes of federal defendants' motion, the Court will only consider claims under the Federal Tort Claims Act. Even if VITCA applied to these defendants, no judgment may be awarded against the Government of the Virgin Islands in excess of $ 25,000.

It is important to recognize that VITCA itself creates no separate causes of action. VITCA simply waives the Territorial Government's immunity from suit in certain defined circumstances. Although plaintiffs appear to treat VITCA as a separate cause of action, the Court will address VITCA only to the extent that plaintiffs have presented independently cognizable causes of action sounding in tort.

[9] Nowhere in the pleadings do the plaintiffs state the nature of the alleged Tenth Amendment violations. The plaintiffs' claims appear to rest on alleged violations of the Fourth Amendment and the Due Process Clause. Since the plaintiffs have failed to articulate what rights were violated which would be protected under the Tenth Amendment, and the Court is unable to hazard a guess what these rights would be, the Court will dismiss this portion of the amended complaint for failure to state a claim upon which relief may be granted.

Constitution, Section 3 of the Revised Organic Act,[10] FTCA, and the Virgin Islands Tort Claim Act.[11]

Nestled throughout the complaint and amended complaint, like needles in the proverbial haystack, are hints at other causes of action. It appears that plaintiffs attempted to allege defamation and libel, intentional and/or negligent infliction of emotional distress, and common-law negligence. The Court will assume that the plaintiffs intended to bring these causes of action against both the federal defendants and the territorial defendants.

In the amended complaint, plaintiffs added the assertion that the federal officers, along with the local law enforcement agents, were engaged in a conspiracy, the aims of which included, among other things, ruining Imam Yasin's firearms business, framing Mr. Yasin, ruining plaintiffs' good names, and ultimately causing the plaintiffs' death. Other than the plaintiffs' unsubstantiated statements, there are virtually no facts alleged in the amended complaint which would support a finding that such a conspiracy existed. Plaintiffs make no attempt to state which defendants may be liable under any of the individual causes of action, or even which defendants took part in the acts for which plaintiffs have brought this suit. Plaintiffs also fail to articulate whether the defendants are sued in their official or individual capacities, or to differentiate damages among the actions and actors. For all of the claims in the complaint, plaintiffs seek damages in the amount of $ 50,250,000.00 and interests, costs, and attorney's fees.

The Court has given the plaintiffs numerous opportunities to clarify the claims asserted in their amended complaint, both by granting leave to amend the complaint and during hearings and

---

[10] Revised Organic Act of 1954 § 3; 48 U.S.C. § 1561. The Revised Organic Act of 1954 is found at 48 U.S.C §§ 1541-1645 (1995), reprinted in V.I. Code Ann., Historical Documents, pp. 73-177, preceding Title I (codified as amended) (1995) ["Revised Organic Act"].

Section 3 of the Revised Organic Act contains a provision adopting the protections of the Fourth and Fourteenth Amendments of the United States Constitution. Nowhere in the plaintiffs' pleadings is it stated what specific rights granted by § 3 of the Revised Organic Act were violated. Since § 3 only serves to extend the application of the Fourth and Fourteenth Amendments to the Virgin Islands, the Court will address plaintiffs' claims in terms of those amendments.

[11] *See* footnote 8, *supra*.

conferences. Although possessing neither the wisdom of Solomon nor the patience of Job, the Court will attempt to divine the meaning and intent of the amended complaint to the best of its abilities [the amended complaint is hereafter referred to as simply the "complaint"].

### B. *Improper Joinder*

In their motion, the federal defendants have asked to be dismissed from plaintiffs' complaint due to improper joinder. In order for permissive joinder of parties to be proper, a question of law or fact common to the parties must be present. FED. R. CIV. P. 20(a). Misjoinder of parties "arises when they fail to satisfy any of the conditions of permissive joinder under RULE 20(a)." *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164, 190 (D.V.I. 1975). In cases of misjoinder, "parties may be dropped or added by order of the court on motion of any party or of its own initiative . . . ." FED. R. CIV. P. 21.

The operative acts with any legal significance alleged in plaintiffs' complaint were performed by the territorial defendants. Plaintiffs have alleged no actions by any of the federal defendants upon which any of the federal defendants could be held legally liable under any of the plaintiffs' theories of liability or causes of action. There is no factual basis for plaintiffs' assertion that the DEA was in any way involved in the execution of the search warrant. Plaintiffs do not allege that the federal defendants were involved in the preparation of affidavits supporting the warrant. Regarding former DEA agent Huckaby, now retired and living in Florida, plaintiffs have come forward with no evidence to rebut his deposition testimony that he took no part in obtaining the warrant or executing the search, which he had learned of only one hour beforehand. In short, plaintiffs have presented no evidence of any unlawful activity on the part of the federal defendants.

Absent a common question of law and fact, misjoined parties are normally dropped from a lawsuit. This case, however, has been pending for several years, and plaintiffs have amended their complaint to allege that the federal defendants engaged in a conspiracy to assassinate Imam Yasin, at least figuratively if not literally. Although plaintiffs have not·defined the parameters of

this conspiracy, the Court will assume, for the sake of argument and judicial efficiency, that such a conspiracy would present a common question of law and fact making joinder of the federal defendants and the local defendants proper. The Court now rules on the motion of the federal defendants for summary judgment.[12]

## C. Summary Judgment

### 1. The Standard

Under RULE 56 of the FEDERAL RULES OF CIVIL PROCEDURE, a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Our task is the "threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

■ The mere existence of some evidence in support of the non-moving party will not be sufficient to withstand summary judgment; rather, there must be enough evidence to enable a jury reasonably to find for the non-moving party on the issue. *Witco Corp. v. Beekhuis*, 38 F.3d 682, 686 (3d Cir. 1994). The non-moving party "may not rest upon the mere allegations or denials of his [or her] pleadings, but his [or her] response . . . must set forth specific facts showing that there is a genuine issue for trial." *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1178 (3d Cir.1994) *(citing Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 88 L. Ed. 2d 467, 106 S. Ct. 537 (1985).

---

[12]The territorial defendants' converted motion for summary judgment is considered separately.

## 2. Applying the Standard for Summary Judgment to Plaintiffs' Complaint

■ Contrary to plaintiffs' assertions, the facts in this case regarding the federal defendants are not in dispute and are relatively simple. Plaintiffs have included in their amended complaint many unsupported conclusory opinions, much speculation, and some sheer guesswork.[13] The Court is not obliged to presume that all of plaintiffs' speculations are true when considering a motion for summary judgment. Such representations by plaintiffs are not disputed facts. *See Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1178 (3d Cir. 1994). A complaint containing conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion for summary judgment. *Contemporary Mission, Inc. v. Postal Service,* 648 F.2d 97 (2d Cir. 1981). When the allegations of plaintiffs' amended complaint are stripped of their conclusory opinions, speculation and guesswork, as set forth by the Court in the "Facts" section of this Memorandum, the undisputed facts which are left are virtually identical to those cited by the defendants. The Court's task then, is to apply the law governing each of plaintiffs numerous causes of action against first the federal and then the territorial defendants based on these undisputed facts.

---

[13] The unsubstantiated allegations and conclusions stated as fact abound in this complaint. Some examples include:

"Plaintiffs . . . have never been guilty . . . [and] had never been suspected to have been guilty of possession of cocaine, conspiracy to distribute cocaine, and illegal possession of automatic assault rifles, handguns, hand grenades or other illegal firearms . . . ." Complaint at 3.

"On November 14th, 1992, at 6:30 A.M., maliciously contriving and intending to injure Plaintiffs in their good names, and to cause their physical demise and/or bring them into public disgrace or scandal . . . ." Complaint at 7.

"The law enforcement officers . . . had no reason to believe from the facts within their knowledge that the law was being violated . . . ."

"The ulterior motive in this case is clearly anti-Islamic persecution . . . . The primary purpose of the search herein was not to bring an offender to justice." Complaint at 12.

"It is Imam Abdallah's belief and contention along with that of his advisors and many of his constituents that this phony raid and search were only meant to be a 'front' and a 'cover' for an intended assassination of Imam Abdallah's person and/or reputation because of who he is, an Islamic leader of National International repute. Imam Abdallah could easily have been murdered and this matter attempted to be written off as a (mistaken) drug bust gone sour.'" Complaint at 13.

## III. The Federal Defendants

### A. *The Motion for Summary Judgment*

#### 1. The Execution of the Search Warrant

Plaintiffs have failed to show any evidence that the federal defendants took part in any way in either the planning or execution of the search warrant. Agent Huckaby was the only federal agent who was even made aware of the raid, and that was only one hour before the warrant was executed. No federal agent took part in the execution of that warrant. Plaintiffs have not alleged any specific facts showing a genuine issue in this regard. *See Lundy* 34 F.3d at 1178. The Court finds that the plaintiffs have not presented any evidence, let alone sufficient evidence, to enable a jury to find in their favor on the issue of federal involvement in the planning and execution of the search warrant or to avoid an adverse award of summary judgment on this issue.

#### 2. The Conspiracy

■ In their amended complaint, plaintiffs added an expansive claim of conspiracy on the part of the federal defendants, with the apparent goal of destroying Imam Yasin's business, reputation and life. Other than unsubstantiated accusations, plaintiffs have put forth no evidence to show any conspiracy by any of the federal defendants against Imam Yasin in regard to his federal firearms license. Plaintiffs have presented no facts linking the inspections of Yasin's business by Inspector Zapata and the execution of the search warrant by the VIPD and NSF. Zapata's sworn declaration, that he was not aware that the plaintiffs' premises had been searched by local law enforcement officials until the commencement of the lawsuit has not been rebutted by plaintiffs. (Exhibit 4, Federal Defendants' Memorandum in Support of Their Motion to be Dropped from the Case, or, in the Alternative, their Motion to Dismiss the Complaint or For Entry of Summary Judgment.) Mere allegations of conspiracy are not enough. *See, e.g., Lundy*, 34 F.3d at 1178. Without any factual basis to support their claim, the Court concludes that plaintiffs' allegations of conspiracy are baseless.

#### 3. The Licensing Procedure

■ Imam Yasin's federal firearms license renewal was denied initially when it appeared that he had not met certain requirements

established by law. Yasin was advised of and exercised his appeal rights, showed that he met the requirements, and his license was renewed. Since plaintiffs have not shown any deprivation of rights to relevant administrative processes or procedures, there can be no violation of procedural due process. *See, e.g., United States v. James Daniel Good Real Property et al.*, 510 U.S. 43, 126 L. Ed. 2d 490, 114 S. Ct. 492 (1993). The only substantive right implicated by the licensing procedure was Mr. Yasin's right to a license. Since Imam Yasin's FFL was renewed, his claim of a violation of substantive due process must also fail.

## 4. Agency Theory

■ Plaintiffs have not alleged any factual bases for a finding that the federal defendants had a role in depriving plaintiffs of any rights, or that those individuals who took part in the execution of the search warrant could be considered agents of the United States. The federal defendants took no part in the preparation of the search warrant. The execution of the warrant was a matter completely under the control of local law enforcement. There has been no factual allegation or evidence presented which shows that the local law enforcement officers were acting under, or believed they were acting under federal control or guidance.[14]

## 5. Conclusion: Federal Defendants Are Entitled to Summary Judgment

Plaintiffs have failed to present my evidence on which a jury could reasonably base a verdict against the federal defendants. There is no evidence that they took part in the execution of the

---

[14] Plaintiffs do not assert that either the VIPD or NSF agents were federal employees or agents, nor could they. "Employee of the [federal] government," as defined by 28 U.S.C. § 2671

includes officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

"The United States cannot be liable when there is no master-servant relationship between the United States and the alleged wrongdoer." *Liburd v. Platzer*, 25 V.I. 171, 179 (D.V.I. 1990) (citing *Logue v. United States*, 412 U.S. 521, 37 L. Ed. 2d 121, 93 S. Ct. 2215 (1973)). *See also, Harris v. Boreham*, 233 F.2d 110, 115-116 (3d Cir. 1956) (Virgin Islands employee was not an employee of the Government of the United States).

search warrant in any way, nor is there any evidence that the licensing procedure was not carried out in accordance with applicable law. The plaintiffs have brought forth no evidence of a conspiracy engaged in by the federal defendants or that the local law enforcement officers could be considered agents of the federal government. The plaintiffs' pleadings are utterly devoid of any facts necessary to survive a motion for summary judgment. Accordingly, the federal defendants' motion for summary judgment will be granted.

### B. Subject Matter Jurisdiction

Even if summary judgment were not proper in this case, the Court lacks subject matter jurisdiction over virtually all the causes of action included in the complaint viz-a-viz the federal defendants. Therefore, dismissal of the claims against the federal defendants would be necessary even if summary judgment were not proper.

1. Individual Defendants Are Immune From Suit for Common Law Torts

■ Plaintiffs have named the Director of the ATF, the Administrator of DEA, and four other federal officers as defendants. The amended complaint must be dismissed to the extent that it alleges common-law torts against these individuals, because the Federal Tort Claims Act precludes suits against federal employees for common-law torts committed during the course and within the scope of their employment. 28 U.S.C. § 2679(b)(1). The proper defendant for such suits would be the United States under the Federal Tort Claims Act.[15] *Boyd v. United States*, 482 F. Supp. 1126, 1128 (W.D. Pa. 1980); *Liburd*, 25 V.I. at 182 (*citing Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir. 1983)). For this reason, the individual federal defendants must be dismissed from the common law tort claims included in the amended complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(6).

2. Section 1983 of Title 42 Is Inapplicable to the Federal Defendants

■ Although the amended complaint is unclear, plaintiffs appear to be suing the United States and the federal defendants for

---

[15] *See* discussion at section B.5, *infra.* 304

violations of 42 U.S.C. § 1983. Unfortunately, "in order to prevail in a § 1983 action, a plaintiff must establish . . . that 'the conduct complained of was committed by a person acting under color of *state* law.'" *Shaw v. Strackhouse*, 920 F.2d 1135, 1141-1142 (3d Cir. 1990)(emphasis added). ATF and DEA agents are federal agents who act under color of *federal* law. *See Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir. 1971); *Richardson v. Virgin Islands Housing Authority*, 18 V.I. 351, 355 (D.V.I. 1981). Plaintiffs have failed to allege or bring forth any evidence that any federal agents were acting under any authority other than that granted to them by federal law. Since § 1983 does not provide a remedy against those acting under color of federal law, even assuming a violation of rights had occurred, relief under 42 U.S.C. § 1983 is unavailable against federal defendants acting under color of federal law and not state law.

Obviously, the United States neither acts under color of state law, nor can it be considered a "person" for purposes of section 1983. *See, e.g., United States v. Vital Health Products*, 786 F. Supp. 761 (E.D. Wis.), aff'd 985 F.2d 563 (7th Cir. 1992); *John's Insulation, Inc. v. Siska Construction Co., Inc.*, 774 F. Supp. 156 (S.D.N.Y. 1991); *Morpurgo v. Board of Higher Education in City of New York*, 423 F. Supp. 704 (S.D.N.Y. 1976). Accordingly, the section 1983 claim would have to be dismissed against the United States as well.

3. The Federal Defendants are Entitled to Qualified Immunity for Bivens Actions

Although not stated as such, the Court will give the plaintiffs the benefit of the doubt and construe their assertion that their Fourth Amendment rights were violated by the federal defendants as a Bivens claim. *See generally Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971).

 A threshhold issue is whether the federal defendants are protected from liability by the defense of qualified immunity. *Butz v. Economou*, 438 U.S. 478, 508, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978). Qualified immunity exists where the federal agents' conduct "does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). This qualified immunity serves as a shield to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986). Any right that a government official has allegedly violated must be "clearly established" so that "a reasonable official would understand that what he is doing violates the right . . . [in] light of preexisting law, the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 638, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

The undisputed facts show that the federal agents did not act unreasonably, or violate any of plaintiff's statutory or constitutional rights. Since no federal agents took part in executing the search warrant, they are clearly immune in that regard. A firearms inspection pursuant to § 923(g) does not violate the Fourth Amendment, even when it is conducted without a warrant. *United States v. Biswell*, 406 U.S. 311, 316, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972). The federal defendants accordingly have qualified immunity for these claims as a matter of law, even if summary judgment were not appropriate. *Rizzo v. Goode*, 423 U.S. 362, 385, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976); *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981).

### 4. Respondeat Superior Provides No Basis for Liability

 Plaintiffs' have named ATF Director Magaw, ATF Resident Agent in Charge, and DEA Administrator Constantine as defendants in their respective individual capacities. Since plaintiffs have provided no indication what these individuals may have done to violate any of the plaintiffs' rights, the Court interprets the allegations of the amended complaint as a cause of action based on a theory of *respondeat superior*. The doctrine of *respondeat superior* has been held inapplicable to *Bivens* claims and to section 1983 actions. *See, e.g., Jett v. Dallas Independent School District*, 491 U.S. 701, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1988); *Young v. Quinlan*, 960 F.2d 351, 358, n. 14 (3d Cir. 1992); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir. 1981). Absent direct involvement by these officials, which plaintiffs have failed to allege, much less prove, these claims must be dismissed against the individual defendants.

### 5. The Federal Tort Claims Act Provides No Basis for Relief

 The FTCA is the exclusive waiver of the sovereign immunity of the United States, *United States v. Kubrick*, 444 U.S. 111, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979), and defines the conditions under which the United States may be sued, *United States v. Sherwood*, 312 U.S. 584, 85 L. Ed. 1058, 61 S. Ct. 767 (1941). If the conditions by which the United States has consented to be sued are not met, the case must be dismissed. *Peterson v. United States*, 694 F.2d 943, 945 n.5 (3d Cir. 1982).

Plaintiffs have failed to meet many of the pre-conditions for relief under the FTCA, for example, no exhaustion of Administrative remedies against the ATF regarding the Imam's federal firearms license, *see, e.g., Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers*, 520 F.2d 11, 24 (3d Cir. 1975), and no wrongful act by a federal employee as is required by FTCA, *see, e.g., Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 196 n.14 (3d Cir. 1984).

 Certain claims brought by the plaintiffs are not cognizable under FTCA, such as libel and slander claims. 28 U.S.C. § 2680(h). *See, e.g., Quinones v. United States*, 492 F.2d 1269, 1279-1280 (3d Cir. 1974). Moreover, the United States is liable under FTCA only to the extent that a private individual would be liable under the law of the place of the accident. *Molzof v. United States*, 502 U.S. 301, 112 S. Ct. 711, 714, 116 L. Ed. 2d 731 (1992). The plaintiffs' apparent allegation of intentional and/or negligent infliction of emotional distress must fall for failure to satisfy the requirement that the defendants' conduct be a substantial factor in bringing about the harm. *See, e.g., Codrington v. Virgin Islands Port Auth.*, 33 V.I. 215, 911 F. Supp. 907 (D.C.V.I. 1996). Similarly, the plaintiffs have not shown actionable negligence by the federal defendants, since they cannot establish a breach of a legal duty or proximate cause of any injury. *See, e.g., Baumann v. Canton*, 7 V.I. 60, 67 (D.C.V.I. 1968).

 To the extent that plaintiffs' amended complaint alleges violations of constitutional rights, such claims are not cognizable against the United States under the FTCA. *FDIC v. Meyer*, 510 U.S. 471, 127 L. Ed. 2d 308, 114 S. Ct. 996 (1994). Plaintiffs cannot

circumvent this proposition by suing the federal defendants in their official capacities, because they are in reality suits against the United States since any judgment would be paid out of the United States treasury. *See, e.g., Will v. Michigan Department of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). For all of these reasons, summary judgment will be entered in favor of the federal defendants dismissing plaintiffs' amended complaint against them in its entirety.

## IV. The Territorial Defendants

### A. Immunity

#### 1. The Standard

■ The first issue to be dealt with is immunity. Even if plaintiffs had brought well-pleaded claims which are recognized by law, defendants would avoid liability by the successful assertion of immunity. For suits against law enforcement officers arising under Virgin Islands law, the requisites of an immunity defense are identical to the federal bases for immunity. *See Nibbs v. Roberts*, 31 V.I. 199, 210-211 (D.C.V.I. App. 1995). Generally, 'good faith' or qualified immunity attaches in a suit for civil damages when the conduct of the government employee performing a discretionary function "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). The defense of qualified immunity has been extended to officers making arrests, executing searches and making seizures. *Hunter v. Bryant*, 502 U.S. 224, 116 L. Ed. 2d 589, 112 S. Ct. 534, (1991). Thus, when an officer is sued for Fourth Amendment violations or other tortious conduct, he may defend by asserting that his conduct conformed to what "a reasonable officer could have believed to be lawful, in light of clearly established law and the information the . . . officer[] possessed. [His] subjective beliefs about [his actions] are irrelevant." *Anderson v. Creighton*, 483 U.S. 635, 641, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

■ If entitled to it, an officer has "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."

*Mitchell v. Forsyth*, 472 U.S. 511, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985), quoted in *Hunter v. Bryant*, 112 S. Ct. at 536; *See also Nibbs v. Roberts*, 31 V.I. 199, 210-211 (D.C.V.I. App. 1995). It is thus important that immunity questions be resolved as early as possible, *Hunter v. Bryant*, 112 S. Ct. at 536, and the officer has the burden of pleading and proving the defense. *Gomez v. Toledo*, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980). The standard for resolving this issue before trial is whether the evidence could support a reasonable jury's verdict that the defendant's actions, when considered in the light most favorable to the plaintiffs, including all reasonable inferences on plaintiffs' behalf. *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

2. The Search Warrant

The plaintiffs appear to make two distinct allegations against the territorial defendants: (1) they lied and committed fraud in preparing the affidavit of Willie Bourda as support for the search warrant, and (2) the warrant was executed in an unlawful manner.

a. The affidavit in support of the warrant

The seminal case dealing with misrepresentations in affidavits supporting search warrants is *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). The Court held that "When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing." *Id*. at 164-165. The requirement of truthfulness "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . but surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id*. at 165. If an informant's tip is the source of the information, the affidavit must recite some of the underlying circumstances from which the informant concluded' that relevant evidence might be discovered, and "'some of the underlying circumstances from which the officer concluded that the informant, whose identity

need not be disclosed, . . . was 'credible' or his information 'reliable.'" *Id.*[16]

■ There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, therefore, plaintiffs' attack must be more than conclusory and must be supported by more than a mere desire to cross-examine before an evidentiary hearing is justified. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. Plaintiffs would have to point out specifically the portion of the warrant affidavit that is claimed to be false and provide a statement of the supporting facts. Affidavits or sworn or otherwise reliable statements of witnesses would need to be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. Moreover, only the affiant may be impeached, not the confidential informant providing the information to the affiant; and the affiant's testimony can only be impeached by showing that the affiant deliberately, falsely or recklessly disregarded the truth. Finally, if, after these requirements are met, and if, after the allegedly false or recklessly disregarded information is set to one side, there is still sufficient unimpeached information in the affidavit to support a finding of probable cause, no evidentiary hearing ·is required. *Franks v. Delaware,* 438 U.S. at 171-72.

■ The courts have applied the tests of Franks in civil cases involving claims that the police secured a warrant through the intentional misrepresentation of facts. *See, e.g. Simmons v. Poe,* 47 F.3d 1370 (4th Cir. 1995); *Olson v. Tyler,* 771 F.2d 277 (7th Cir. 1985);

---

[16] In 1978, when *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) was written, the guideposts for assessing informants' credibility were the Supreme Court opinions in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). These cases required that, before an informant's statements could be considered reliable, the affidavit must contain information explaining the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable, as well as some independent corroboration of the informant. Since *Franks,* the Supreme Court has retreated from the formalistic approach of Aguilar and Spinelli and has adopted a totality of the circumstances approach in determining the reasonableness of the affiant's reliance on the information provided by the informant. *See, e.g., Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983).

*Willocks v. Dodenhoff*, 110 F.R.D. 652 (D. Conn. 1986). Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the search violate the Fourth Amendment, but the officer will not be entitled to a good-faith or qualified immunity. *Olson* at 282. ʻThe *Franks* Court carefully excluded police negligence in checking or recording facts relevant to a probable cause determination from the embrace of the rule. *See, United States v. Levasseur*, 619 F. Supp. 775, 778 (E.D.N.Y. 1985)(plaintiff must show more than police negligence to meet *Franks* requirements). Falsity which can impeach a search warrant must result from intentional or reckless conduct.

At the hearing on January 29, 1997, plaintiffs represented that they had been prevented from discovering any evidence or conducting any depositions on this issue. The Court was unaware of any reason why evidence in this area would have been precluded, since the Court has issued no protective orders in this case.

Plaintiffs were nevertheless granted additional time to conduct discovery limited to the question of the territorial defendants' reliance on the confidential informant in requesting the warrant.[17] The time allowed has long since run out without plaintiffs submitting any additional basis for challenging the affidavit. The evidence before the Court offers no support for the plaintiffs' contentions that the defendants knew the informant's information was false, or that they recklessly relied on the confidential informant.

Plaintiffs have utterly failed even to allege sufficient facts to justify a finding of intentional falsity by the territorial defendants. Without such a finding, the Court must rule that the territorial defendants acted in good faith in preparing the warrant application, and accordingly grant limited immunity for the warrant application process. Once limited immunity is granted, the plaintiffs cannot proceed with claims based upon the application for the warrant.

b. The execution of the warrant

The affidavit was presented to a United States magistrate judge, who determined that probable cause existed and issued the search

---

[17] *See* Orders of March 7, 1997 and May 5, 1997. In the March 7, 1997 order granting extra time, the Court took pains to point out to plaintiffs what evidence they had to be able to present in order to bring into question the validity of the informant's information in the affidavit.

warrant, which the territorial defendants executed. The only allegations plaintiffs have presented to rebut these facts is the assertion that the defendants sought to destroy, at the very least, Imam Abdallah's reputation. Under *Creighton*, however, officers subjective beliefs are not relevant to the immunity inquiry. The issue is whether a reasonable officer would have acted in the manner that defendants acted. The Court accordingly finds that the officers acted reasonably and reasonably relied on the warrant in executing the search.

 The allegations and evidence show that the search was carried out in a reasonable manner. The plaintiffs base their claim to the contrary on the following: the search lasted for one and one-half hours, the officers searched the house even though the address on the warrant was listed incorrectly as Estate Montpelier and not Estate Orange Grove, and the territorial defendants brought a dog into the house. The Court finds that these allegations, taken together, do not even approach unreasonableness. One and one-half hours is clearly a reasonable length of time for a search of a residence, and plaintiffs do not allege that the territorial defendants did any physical damage during the search. Although the wrong estate name was on the warrant, the house was described in great particularity, including the color, the location, its distance from fixed points, and other references. Also, the correct address of Estate Orange Grove borders on Estate Montpelier. The use of a dog to search for narcotics is a standard procedure often used in searches, and is clearly not enough to render the search unreasonable. Plaintiffs have presented no facts by way of affidavit or otherwise to contradict these conclusions. Accordingly, since the officers carried out their official duties in a reasonable manner, the territorial officers are entitled to qualified immunity from this lawsuit in its entirety.

### B. Count I: Malicious Prosecution (Wrongful Search)

 Even apart from the qualified immunity issue, the plaintiffs largely fail to state claims upon which relief may be granted. As already made clear, there are no facts in dispute about the events

on which plaintiffs based their complaint. In Count I, plaintiffs have attempted to state a claim for malicious prosecution, arising under FTCA and VITCA. FTCA is a federal statute which waives the sovereign immunity of the United States, but not the Virgin Islands, for tort liability in certain limited circumstances. FTCA only waives the immunity of federal government of the United States, for to waive the liability of any other sovereign would violate the Eleventh Amendment. For this reason, any claims brought by the plaintiffs against the territorial defendants under the FTCA must be dismissed, even if the FTCA provided a basis for suits against individuals.

The Virgin Islands Tort Claims Act, on the other hand, defines the circumstances in which the Government of the Virgin Islands has waived its immunity from tort liability. Under 33 V.I.C. § 3408, the Territory has assumed liability for the negligent acts or omissions of its employees acting within the scope of their employment.[18] Under 33 V.I.C. § 3411(c), no judgment shall be awarded against the Government of the Virgin Islands in excess of $ 25,000; a substantial narrowing of the $ 50,250,000 the plaintiffs seek.

In their amended complaint, the plaintiffs fail to state the specific torts for which the territorial defendants should be held liable under VITCA. However, elsewhere in the complaint, plaintiffs hint at causes of action for negligent and intentional infliction of

---

[18] 33 V.I.C. § 3408 provides that:

(a) Subject to the provisions of section 3416 of this chapter, the Government of the United States Virgin Islands hereby waives its immunity from liability and action and hereby assumes liability with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the United States Virgin Islands while acting within the scope of his office or employment, under circumstances where the Government of the United States Virgin Islands, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The Government consents to have the liability determined in accordance with the same rule of law as applied to actions in the courts of the Virgin Islands against individuals or corporations; Provided, That the claimant complies with the provisions of this chapter.

(b) The provisions of subsection (a) of this section shall not apply if the injury or loss of property is caused by the gross negligence of an employee of the Government of the Virgin Islands while acting within the scope of his office or employment.

emotional distress, defamation and libel, and common law negligence. The Court will give the plaintiffs the benefit of the doubt and construe the amended complaint as alleging that these are the torts for which relief is sought in this count.

## 1. Emotional Distress

■■ An intentional infliction of emotional distress tort is committed when, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . ." *Codrington v. Virgin Islands Port Auth.*, 33 V.I. 215, 911 F. Supp. 907 (D.C.V.I. 1996). The conduct must be extreme and outrageous. It is not enough that the defendant acted with tortious intent or even that he acted with malice. RESTATEMENT (SECOND) TORTS § 46(1), comment'd (1965).[19] Plaintiffs have failed to state how the emotional distress was caused, or what outrageous conduct caused it. The territorial law enforcement officers were not involved in the Federal Firearms Licensing procedure in any way. Without such involvement, plaintiffs have not stated a claim against the territorial defendants for this conduct. Construing the complaint most favorably for the plaintiffs, any outrageous conduct on the part of the territorial defendants necessarily would have had to occur during the planning and the execution of the search warrant.

■ Plaintiffs have failed to present any facts showing that the territorial defendants' conduct regarding the warrant was outrageous, as discussed earlier. Other than unsubstantiated allegations and conclusions, plaintiffs have not shown that the territorial defendants' conduct diverged from lawful investigatory procedure in any way, nor have they tried to bring forth any such facts. The plaintiffs state that they are honest people, but they have not set forth any specific damages which the defendants have caused, or how these damages were caused by the unreasonable actions of the defendants in executing the warrant. The facts are not disputed, and they are insufficient to support a finding of outrageousness. Accordingly, summary judgment for the territorial defendants will be entered on this claim.

---

[19] In the absence of statutory law on point, the Restatements serve as binding law in the Virgin Islands.

■ Plaintiffs have similarly failed to meet the required elements for a claim of *negligent* infliction of emotional distress. This Court has required two elements to sustain a claim of negligent infliction of emotional distress. First, the negligent conduct must have placed the plaintiff in danger of his or her own safety. Second, the plaintiff must have suffered some physical harm as a result of the emotional distress. *Mingolla v. Minnesota Mining and Mfg. Co.,* 893 F. Supp. 499, 506 (D.V.I. 1995). *See also Lempert v. Singer,* 26 V.I. 326, 766 F. Supp. 1356 (D.C.V.I. 1995) (there can be no liability for negligent infliction of emotional distress absent any physical harm).

Plaintiffs have failed to show that their safety was in danger, apart from groundless allegations of an assassination conspiracy. Plaintiffs also have failed to allege any physical harm as a result of the distress. Accordingly, any claim for negligent infliction of emotional distress must be dismissed for failure to state a claim upon which relief may be granted. Even if plaintiffs had submitted evidence of physical injury, the undisputed facts show that defendants were not negligent, so summary judgment in defendants favor is proper. Qualified immunity of the defendants would also prevent liability for this claim.

2. Defamation

To prevail on a claim for defamation under Virgin Islands law, plaintiff must show the following:

a) a false defamatory statement concerning another;

b) an unprivileged publication to a third party;

c) fault amounting at least to negligence on the part of the publisher; and

d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*See Ross v. Bricker,* 26 V.I. 314, 770 F. Supp. 1038, 1042 (D.C.V.I. App. 1991)(*citing* RESTATEMENT (SECOND) OF TORTS § 558 (1977)).

■■ Plaintiffs again have failed to prove the elements of this claim. First, they have not identified which statements they con-

tend are libelous or defamatory. If they were referring to the affidavit supporting the search warrant, plaintiffs have not singled out which statements or brought forth any evidence that they were false. Therefore, the Court is unable to find that the statements were false.[20] Further, plaintiffs have not alleged that whatever statements they were referring to were published, or that they suffered special harm due to the publication. Plaintiffs have made the ambiguous assertion that Imam Abdallah has lost his good name, but have failed to provide any details describing how this loss occurred. This general allegation does not meet the requirements of a well-plead allegation of defamation. Since the plaintiffs have not met these elements, their claim for defamation must be dismissed for failure to state a claim upon which relief may be granted. Accordingly, summary judgment in defendants' favor is appropriate.

3. Common Law Negligence

 The plaintiffs' claims for common law negligence fall for a multitude of reasons. First, plaintiffs have failed to allege facts on which a finding of negligence could be based. Allegations that probable cause was lacking are not sufficient for a finding that defendants acted negligently, if defendants reasonably relied on what they reasonably believed was a valid warrant. Similarly, affidavits stating the plaintiffs' beliefs about the defendants' motivations are not evidence upon which the Court may base conclusions of law. Second, the plaintiffs have failed to show any injury which they suffered as a result of any negligence. Absent such a showing, plaintiffs have failed to state a claim for relief. Even if negligence were found, along with recognized damages, plaintiffs have presented no evidence that any negligence was the proximate cause of the damages. Plaintiffs' claim under common law negligence is without merit. The undisputed facts and the applicable law require the granting of summary judgment in defendants' favor.

---

[20] Plaintiffs unsubstantiated statements in their complaint that probable cause was lacking or that plaintiffs are law-abiding citizens are conclusions, not sufficient factual allegations that the affidavit contained false statements.

316

## C. Count II—Civil Action for Deprivation of Rights

Count II alleges deprivation of rights arising under 42 U.S.C. § 1983, the Fourth, Tenth[21] and Fourteenth amendments, and the Virgin Islands Tort Claims Act.[22] Again, plaintiffs have failed to clarify the nature of these claims, forcing the Court to construe them to the best of its abilities.

### 1. 42 U.S.C. § 1983

■ Count IV of plaintiff's claim asserts a cause of action under 42 U.S.C. § 1983 against the defendants. In bringing a section 1983 claim, plaintiffs must prove two essential elements:

(1) the conduct occurred under color of state law; and (2) the conduct deprived the plaintiffs of rights, privileges, or immunities secured by the United States Constitution or other federal law. Before even reaching the merits of the claim, however, plaintiffs must first prove that the defendants are "persons" subject to suit under section 1983.[23] If the defendants in this case are not such "persons," then the two elements required for a § 1983 claim are irrelevant. In *Ngiraingas v. Sanchez*, 495 U.S. 182, 109 L. Ed. 2d 163, 110 S. Ct. 1737 (1990), the Supreme Court held that a territory of the United States, and individuals acting in their official capacities, were not "persons" for purposes of 42 U.S.C. § 1983.

■ To the extent that plaintiffs' section 1983 claims are brought against the Government of the Virgin Islands and the territorial defendants in their official capacities, the claims must be dismissed

---

[21] Nowhere in the amended complaint do plaintiffs identify what Tenth Amendment rights the defendants may have violated. The Court therefore, will dismiss this claim for failure to state a claim upon which relief may be granted.

[22] Plaintiffs fail to articulate any particular torts which were committed under this Count. Since the court has already addressed torts committed under VITCA in the preceding section, there is no reason to readdress those claims here.

[23] Section 1983 of title 42 provides:

Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added).

317

for failure to state a claim upon which relief may be granted. Damages may not be obtained against the territory or its law enforcement officers in their official capacities, and the plaintiffs are not seeking injunctive relief. The only "persons" recognized by 42 U.S.C. § 1983 are the individual defendants in their individual capacities. In order to proceed with a § 1983 action against the territorial as individuals and not as territorial officials, plaintiffs must show a violation of a constitutional right. Although plaintiffs fail to state explicitly what rights were violated, it appears that they are claiming violations of the Fourth and Fourteenth Amendments. If these rights were not violated, then plaintiffs cannot bring a claim under section 1983.

## 2. Fourth Amendment

■ It appears to the Court that plaintiffs attempt to construct a *Bivens* claim based upon the Fourth Amendment. *See generally, Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). In *Bivens,* the Supreme Court found that a warrantless search performed without probable cause presented a cause of action in which plaintiffs could seek damages. The rationale of this ruling was that without such a cause of action, Fourth Amendment violations could go largely unpunished. The *Bivens* decision, however, only applied to constitutional claims against the federal government. Since a remedy already exists under 42 U.S.C. § 1983 for plaintiffs making claims against officials acting under the authority of state or territorial law, a *Bivens* action is not appropriate against the territorial defendants. *See Eddy v. Virgin Islands Water and Power Auth.*, 36 V.I. 200, 961 F. Supp. 113 (D.C.V.I. 1997). Accordingly, to the extent that plaintiffs assert a *Bivens* claim, summary judgment will be granted for the territorial defendants.

The plaintiffs' also appear to allege that their Fourth Amendment rights were violated due to the manner of the execution of the search. Such an allegation, however, is more accurately characterized as a violation of substantive due process than a Fourth Amendment violation. Accordingly, this allegation will be addressed in the discussion of Fourteenth Amendment claims.

318

### 3. Fourteenth Amendment

Plaintiffs have also stated that Count II arises under the Fourteenth Amendment, although they fail to specify how that it applies to the facts of their case. Presumably, plaintiffs are alleging a deprivation of due process. It appears that there are two possible manners in which this could be alleged by plaintiffs. They could allege a violation of procedural due process in regard to the federal firearms licensing procedure, or a violation of substantive due process by executing the search warrant without probable cause.

██ ██ There is no basis for a procedural due process claim since plaintiffs have brought forward no evidence that (1) the territorial defendants played any role in the federal licensing process, or (2) any violations took place during that process. There is also no basis for a substantive due process claim since (1) plaintiffs have failed to show that probable cause was lacking, (2) allegations of lack of probable cause are not cognizable as violations of substantive due process, *See Albright v. Oliver*, 510 U.S. 266, 271, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994), and (3) plaintiffs have not brought forth any evidence of negligence, reckless disregard or deliberate indifference, let alone conduct which would "shock the conscience," *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 117 L. Ed. 2d 261, 112 S. Ct. 1061 (1992); *Fagan v. City of Vineland*, 22 F.3d 1296 (3d Cir. 1994). *Eddy v. Virgin Islands Water and Power Auth.*, 35 V.I. 441, 955 F. Supp. 468 (D.C.V.I. 1997). Accordingly, plaintiffs' claims that the territorial defendants violated their procedural and substantive due process rights will be dismissed for failure to state claims upon which relief may be granted.[24]

### V. Remaining Motions

There are several motions which have yet to be decided. These motions include plaintiffs' motions to compel and for sanctions against the territorial defendants and the territorial defendants' motions for a protective order and for reconsideration of the Court's conversion of their motion to dismiss into a motion for

---

[24] Plaintiffs also claim that Count II arises under VITCA. Plaintiffs fail, however, to state any additional torts they are alleging, other than the claims of emotional distress, negligence and defamation. As the claims for emotional distress and defamation have already been dealt with earlier, there is no reason to address them again here.

319

summary judgment. Since summary judgment is granted in favor of both the federal defendants and the territorial defendants, the case will be closed and all remaining motions will be denied as moot.

## VI. Conclusion

Plaintiffs' complaint contains what can only be characterized as random allegations lacking in coherence. The Court has given the plaintiffs the benefit of construing the allegations in their favor whenever possible. In an effort to conserve judicial resources, the Court has assumed that joinder of the federal defendants was proper, and has treated their motion as a motion for summary judgment.

Whatever reasonable interpretation the Court employs, there are no material facts at issue, and the law is clearly on the side of the federal defendants. While plaintiffs offer conclusions and opinions which differ greatly from the defendants, the concrete facts which have been presented are not in dispute. Despite numerous opportunities, through hearings, conferences, and amended pleadings, to clarify and state claims which are cognizable in the law, and to allege sufficient facts to warrant further proceedings, plaintiffs are either unwilling or unable to do so. "Ignorance of the law is no excuse in any country. If it were, the laws would lose their effect, because it can always be pretended." Thomas Jefferson, Letter to Andre Limozin, 22 Dec. 1287, in Papers of Thomas Jefferson 12:451 (Julian P. Boyd ed. 1955). As detailed in this Memorandum, dismissal for failure to state a claim upon which relief may be granted and summary judgment will be granted in defendants' favor, as the facts and the law clearly require that result.

The plaintiffs have brought forth no evidence that the federal defendants had any meaningful role in the events of November 14, 1992. Agent Huckaby attended the pre-raid briefing, but when he learned that the residence had a federal firearms license, he took no further part in the matter. Plaintiffs have been able to show no other involvement by any federal agent.

In regard to Imam Yasin's federal firearms license, the plaintiffs have failed to produce evidence of any violation of Mr. Yasin's procedural or substantive due process rights, since he received

prompt hearings, as a result of which his license was renewed. There has been no link established between the federal firearms license process and the execution of the search warrant. Plaintiffs attempt to manufacture a conspiracy with no factual support, which is insufficient in a court of law. As plaintiffs' complaint is utterly devoid of factual support, the federal defendants' motion for summary judgment must be granted. Even if, however, summary judgment was not proper, the claims in plaintiffs' complaint against the federal defendants would stand dismissed for lack of subject matter jurisdiction.

Plaintiffs' complaint is similarly deficient against the territorial defendants. The territorial defendants have put forth a compelling claim for the granting of qualified immunity, which the plaintiffs have failed to rebut with even a shred of factual evidence. The plaintiffs have failed to bring forth sufficient facts to survive the territorial defendants' motion for summary judgment, and many of these claims fail to state a claim upon which relief may be granted. Accordingly, territorial defendants' motion for summary judgment will be granted.

While plaintiffs make claims of religious persecution, the facts, and all fair inferences to be drawn from them, convince the Court that plaintiffs were treated as any persons would have been treated by law enforcement officials in like situations, regardless of religious persuasion or lack thereof. Cloaking otherwise frivolous claims in the guise of religious persecution cannot avail the plaintiffs of the Court's protection. Accordingly, the Court will grant both the federal defendants' motion and the territorial defendants' motion, and dismiss the complaint with prejudice. All remaining motions will be denied as moot, and the case will be closed.

ENTERED this 28th day of August, 1997.

## ORDER

For the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that the federal defendants' MOTION FOR SUMMARY JUDGMENT is GRANTED and the plaintiffs' complaint

against the federal defendants is DISMISSED WITH PREJUDICE. It is also

ORDERED that the territorial defendants' MOTION FOR SUMMARY JUDGMENT is GRANTED and the plaintiffs' complaint against the territorial defendants is DISMISSED WITH PREJUDICE. It is further

ORDERED that all other remaining motions be DEEMED AS MOOT. It is further

ORDERED that this case is CLOSED.

ENTERED this 28th day of August, 1997.