## VIRGIN ISLANDS POLICE DEPARTMENT GOVERNMENT OF THE VIRGIN ISLANDS, Applicant

### v.

## SERGEANT'S BENEVOLENT ASSOCIATION, Respondent

Civil No. 747/1985

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 10, 1986

ALAN D. SMITH, ESQ., Assistant Attorney General—Labor (Government of the Virgin Islands, Department of Law), St. Thomas, V.I., *for applicant*

ALEXANDER A. FARRELLY, ESQ. (BIRCH, DEJONGH & FARRELLY), St. Thomas, V.I., *for respondent*

MEYERS, *Judge*

## MEMORANDUM OPINION

The issue before the Court is whether the order of the Public Employees Relations Board (PERB) in ULPC 84-28 violated the terms of the collective bargaining agreement (the agreement) between the Sergeant's Benevolent Association (SBA) and the Government of the Virgin Islands (Government), which expressly provided that the agreement shall have no effect and shall be unenforceable unless signed by the Governor of the Virgin Islands. We hold that the PERB order did not violate the collective bargaining agreement between the parties and should, therefore, be enforced.

## FACTS

The undisputed facts are that on September 15, 1983, the SBA and the Government entered into a collective bargaining agreement in which the SBA was to exclusively represent the sergeants and detectives grade II employed by the Department of Public Safety. Subsequently, SBA was certified by the PERB to also represent lieutenants, detectives grade I, captains and chief investigators, and on March 16, 1984, the existing collective bargaining agreement was extended to these additional employees. At a meeting between the SBA and the Government to negotiate salary increases for the positions added to the bargaining unit, the Chief Negotiator offered a pay increase of $1,000 to the employees' base salary, plus ten percent. Prior to the first meeting, the Governor had authorized the Chief Negotiator to use $4.3 million that had already been appropriated by the legislature for negotiation of these new salary contracts.

While the SBA did not accept the Chief Negotiator's offer at this first meeting, the offer was orally accepted at a subsequent meeting and later confirmed in writing. After receiving the written acceptance, the Chief Negotiator agreed to prepare the necessary documents of agreement for execution and met with the Governor

and the director of the budget to achieve this end. Before the implementation of the final agreement, however, the Governor instructed the Chief Negotiator to withdraw the offer and asked the legislature to reallocate the $4.3 million to meet existing payrolls. This reallocation of the appropriated funds was an attempt by the Governor to eliminate a projected deficit.

The SBA then filed a charge with the PERB alleging that the Government had violated § 378(a)(1), (3), (5), (6), and (7) of the Public Employees Relations Act (PERA),[1] 24 V.I.C. § 361 et seq., by withdrawing a final offer for a pay increase which had been accepted by the SBA. The PERB found in favor of the SBA and the Government then filed this application for review.

## DISCUSSION

At the outset, the Court agrees with the SBA that the Government's application for review of the PERB order was not timely filed and that the SBA is entitled to summary judgment. Title 24 V.I.C. § 380(a) does provide that any party aggrieved by a final order of the PERB must file an application for review within 20 days after the date of the final order, and that failure to file in a timely manner entitles the prevailing party to summary judgment. The PERB order was entered on May 15, 1985, and the Government's application for review was filed on June 13, 1985. Clearly, the application was filed after the 20-day limit and summary judgment could be entered on this basis; however, the Court is of the opinion that the interest of justice would be better served by disposition of this matter on the merits, rather than on such technical grounds. Even if the Court were to assume arguendo that the application for review was filed in a timely manner, it

---

[1] Section 378(a)(1), (3), (5), (6), and (7) provides the following:

Unfair labor practices

(a) It is hereby expressly prohibited for any public employer or agent of a public employer willfully to:

(1) interfere with, restrain, or coerce any employee in the exercise of any right guaranteed by this chapter;

(3) discriminate through hiring, tenure, or any term or condition of employment to encourage or discourage membership in an employee organization except as otherwise provided herein;

(5) refuse to bargain collectively in good faith with an exclusive representative;

(6) refuse to participate in good faith in an impasse procedure or hearing or other form of mediation permitted by this chapter;

(7) violate or fail to comply with any of the provisions of this chapter.

would still be compelled to enforce the PERB order in favor of the SBA.

## I.

The Government argues that the agreement to increase the salaries of the positions added to the unit is unenforceable. Not having cited any case law, the Government relies solely on Article XXXI, § 31.3 of the agreement. That section provides the following:

> This Agreement shall have no effect and shall be unenforceable unless signed by the Governor of the Virgin Islands, provided, further that any portion of this Agreement requiring legislative action to permit its implementation by providing additional funds therefor, shall not become effective until the Legislature of the Virgin Islands has enacted implementing legislation.

The Government further contends that the SBA agreed that the agreement would have no effect unless approved by the Governor, and since the Governor did not approve the salary increases, the PERB order violated the agreement.

By its own argument, notwithstanding Section 31.3, the Government appears to concede that the pivotal determinant of the enforceability of the agreement to increase the salaries is the approval of the Governor, rather than just his signature showing his approval. The undisputed fact is that the Governor did approve the salary increases for the positions added to the unit. Before the negotiations between the SBA and the Government commenced, the legislature appropriated funds to be used for negotiated pay increases for Government employees and to fund union contracts which had not yet been negotiated. The Governor then authorized the Chief Negotiator to use these funds for new salary contracts to be negotiated. (See, PERB Decision and Order, p. 3, ¶¶ 5–6.) By authorizing the Chief Negotiator to use the appropriated funds for the new salary contracts to be negotiated, the Governor clearly indicated his approval of them. The Government's argument to the contrary is totally unsupported by the evidence before the Court.

It is well established under the National Labor Relations Act (NLRA),[2] 29 U.S.C. § 151 et seq., that once parties to a collective

---

[2] Note that interpretations of the NLRA, which is embodied in the Labor Management Relations Act of 1947, § 301, 29 U.S.C. § 141 et seq., are applicable in this jurisdiction. Cases such as V.I. Water & Power Auth. v. Gastronomical Workers Union, 20 V.I. 116 (Terr. Ct. 1983), Finch-Sheen v. United Industrial

bargaining process reach a final agreement, the employer is obligated to reduce the agreement to writing, execute it, and implement it, and that a refusal to do so is a refusal to bargain in good faith. H. J. Heinz Co. v. NLRB, 311 U.S. 514, 7 LRRM 291 (1941); Georgia Kraft Co. v. NLRB, 696 F.2d 931, 112 LRRM 2854 (11th Cir. 1983); Garret Railroad Car & Equipment, Inc. v. NLRB, 683 F.2d 731, 110 LRRM 2919 (3d Cir. 1982); NLRB v. L. B. Priester & Son, Inc., 669 F.2d 355, 109 LRRM 3208 (5th Cir. 1982); NLRB v. Singalong, Inc., 652 F.2d 609, 108 LRRM 2429 (6th Cir. 1981); NLRB v. Midvalley Steel Fabricators, 621 F.2d 49, 104 LRRM 2062 (2d Cir. 1980). In some cases, refusal by a party, upon request, to reduce the terms agreed upon in a written instrument, is a per se violation of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. Procter & Gamble Mfg. Co. v. NLRB, 658 F.2d 968 (4th Cir. 1981); NLRB v. Mayes Bros., Inc., 383 F.2d 242 (5th Cir. 1967); NLRB v. Huttig Sash & Door Co., 362 F.2d 217 (4th Cir. 1966); Standard Oil Co. v. NLRB, 322 F.2d 40 (6th Cir. 1963); Bethlehem Shipbuilding Corp. v. NLRB, 114 F.2d 930 (1st Cir. 1940). It may even be a per se violation of the NLRA when an employer misleads the union into believing that an agreement has been reached and that only formal execution remains. NLRB v. Advanced Business Forms Corp., 474 F.2d 457 (2d Cir. 1973); NLRB v. Mayes Bros., Inc., supra.

In Mayes Bros., Inc., for example, the union and the employer were involved in contract negotiations over wage increases and the length of the term of the contract. At the conclusion of the negotiations, the union was led to believe that all that remained to be done was for the employer's attorney to draft the agreement for signature by both parties. Sometime thereafter, it was learned by the union that the employer refused to sign the agreement. The court held that, since the parties had reached agreement on all the substantive terms of the collective bargaining contract and nothing further was required but the parties' signature, the employer's refusal to sign the contract constituted a per se violation of the NLRA.

------

Workers of North America, Civil No. 82-101, 1983, St. T. and St. J. Supp. (D.V.I. January 28, 1983), and Virgin Islands Nursing Association's Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir. 1981) make it clear that in interpreting the PERA, "resort should be made to the decisional law interpreting and applying national labor policy as contained in the Labor Management Relations Act of 1947 . . . ." V.I. Water & Power Auth. at 119. See also, Title 24, V.I.C., Chapter 14, footnote 1 on construction and application.

■ Applying the foregoing principles of law to the case sub judice, once the Government and the SBA had reached final agreement on the new salary contracts, which was done by SBA's written acceptance of the Government's offer, the Government was obligated to reduce the agreement to writing for signature by both parties. Further, the SBA should not have been led to believe that all that remained to be done was execution of the agreement. As the facts indicate, after receipt of the SBA's written acceptance, the Chief Negotiator communicated to the SBA representatives that she would have the necessary documents of agreement prepared for execution. These documents were never executed. Refusal by the Government to reduce the agreement to writing, to execute it, and to implement it, if not a per se violation of the Public Employee Labor Relations Act, is a violation of its duty to bargain in good faith.

## II.

■ As the PERB has stated in its opinion, economic necessity or avoidance of financial burdens is not a defense to the failure to execute a collective bargaining agreement. J. M. Tanaka Construction Co., Inc. v. NLRB, 675 F.2d 1029, 110 LRRM 2297 (9th Cir. 1982); Willis Electric, Inc., 269 NLRB No. 192, 116 LRRM 1045 (1984); Morelli Construction Co., 240 NLRB No. 170, 100 LRRM 1382 (1979); Oak Cliff-Golman Baking Co., 207 NLRB No. 138, 85 LRRM 1035 (1973). The Government holds the position that the collective bargaining agreement pertaining to the negotiated salary increases was not executed because of the reallocation of the appropriated funds for other purposes and that this reallocation was economically necessary. This argument is not a defense to its failure to execute the negotiated agreement.

In the case of NLRB v. L. B. Priester & Son, Inc., 669 F.2d 355 (5th Cir. 1982), the court was faced with a similar situation in which the employer refused to sign a negotiated wage agreement between it and the union on the grounds that it was suffering serious economic difficulties. The court held that the employer had been aware of its financial situation prior to the commencement of negotiations with the union and that there was no evidence showing any abrupt change in the company's financial position to warrant its refusal to sign the agreement. The court further held that the employer's failure to sign the agreement was not excused by its financial circumstances. Similarly, in Morelli Construction Co.,

124

supra, the employer admitted its failure to make contractually required fringe benefit payments, but sought to excuse its conduct based on financial circumstances. The NLRB, finding for the union, held that, "it is . . . well established that economic necessity is not cognizable as a defense to the unilateral repudiation of monetary provisions in a collective bargaining agreement." Id. at 1382.

The Government, in the case at bar, through the actions of the Governor, reneged on the wage increase agreements with the SBA in an attempt to eliminate the projected deficit.[3] The Governor authorized use of the appropriated funds for union contracts in approximately April 1984, and subsequently withdrew his approval around June 1984. Because such little time elapsed between the approval of the funds for union use and withdrawal of that approval, it is reasonable to assume that the Government was aware of the existence of any projected deficit before negotiations began. The projected deficit did not suddenly materialize between the months of April to June 1984. Therefore, the Government should not be allowed to renege on the agreed upon wage increase based on economic difficulties that it was apparently aware of at the time its negotiations with the SBA commenced.

## CONCLUSION

This Court holds that the Government, by refusing to reduce to writing and execute a negotiated agreement to increase the salary of the positions added to the unit, violated its duty to bargain in good faith in contravention of § 378(a)(1), (5) of the Public Employees Labor Relations Act. Economic difficulties, which were apparent prior to its negotiations with the SBA, does not excuse the Government from its obligation to execute the agreement. We further hold that, under the particular facts of this case, the Governor approved the new salary contracts and that his failure to sign the agreement did not affect its validity. The PERB order did not violate the collective bargaining agreement between the SBA and the Government, and should, therefore, be enforced.

---

[3] Title 24 V.I.C. § 377(a) provides that the Office of Collective Bargaining, which negotiates on behalf of the Government through the Chief Negotiator, shall be supervised at the direction of the Governor. As such, refusal by the Governor to approve a properly negotiated collective bargaining agreement—negotiations which he authorized—is deemed to be a refusal by the Government, as an employer, to recognize a collective bargaining agreement into which it entered.

## ORDER

The Court, having issued its memorandum opinion of even date, it is hereby

ORDERED that the PERB order in ULPC 84-28 be and the same is AFFIRMED.