**SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA,**
**Appellant**
**v.**
**SHIRLEY THOMAS, Appellee**

Civ. No. 169/1996

District Court of the Virgin Islands

Div. of St. Croix, Appellate Division

March 26, 1999

GEORGE W. CANNON, JR., ESQ., St. Croix, U.S.V.I., *for Appellant*

RONALD RUSSELL, ESQ., St. Croix, U.S.V.I., *for Appellee*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

## I. INTRODUCTION

The Seafarers International Union of North America, Atlantic, Gulf Lakes and Inland Waters District ["SIU," "union," or "appellant"] contests the jury verdict and judgment rendered in the Territorial Court, finding it liable for losses sustained by Shirley Thomas ["Thomas" or "appellee"]. Specifically, SIU appeals the Territorial Court's denial of its motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50. For the reasons set forth below, the Court will affirm the award of compensatory damages and vacate the award of damages for emotional distress.

## II. FACTUAL AND PROCEDURAL HISTORY

Although the parties dispute some of the facts, they do agree on the following: On or about March 5, 1973, Shirley Thomas was hired by the Department of Health as a Clerk Stenographer III. (Appendix ["App."] at 54, 786.) In 1974, Thomas became a member of the Seafarers International Union ["SIU"] and remained a member in good standing until her retirement. *Id.* at 55.) Sometime in 1975, Thomas was transferred to the Bureau of Financial and Program Audit. (*Id.* at 58). From approximately 1975 until 1987, Thomas was classified as a Clerk Stenographer III but was per-

forming the duties of an Administrative Secretary or Administrative Officer.[1] This appeal concerns the union's alleged failure to properly represent Thomas in her attempt to obtain the correct classification and corresponding higher salary.

Based on the documents submitted to the appropriate government personnel, but not to the union, and made a part of the appendix to this appeal, the following are undisputed events between 1975 and 1987. In a letter to the Director of Personnel dated January 21, 1983, Thomas' supervisor, Leroy Daniel ["Daniel"], requested that Thomas be reclassified as an Administrative Secretary II because for the "past seven years to present [Thomas] has been effectively working as an Administrative Secretary for this Division." (*Id.* at 754.) On May 8, 1983, Daniel composed a memorandum addressed "To Whom It May Concern," advising that Thomas was working as an Administrative Secretary and not a Clerk Stenographer. (*Id.* at 752.) Daniel sent a third letter in December of 1986, advising that Thomas' position was improperly classified. (*Id.* at 753.)

The first documented involvement of the union was the filing of a grievance in April 1984 by Larry Guinn, a union field representative. (*Id.* at 758.) In December, 1986, Thomas wrote a letter to James Coppin, also a union field representative, requesting his immediate attention to the classification dispute. (*Id.* at 759.) On March 30, 1987, following a meeting between union officials and government representatives, the government promoted Thomas to Administrative Officer II with the related pay increase but no back pay.

The union subsequently filed a grievance on March 17, 1988, demanding back pay for Thomas from 1975 to 1987. (*Id.* at 751.) Union representatives met with the Commissioner of Health on June 18, 1988, and the parties agreed that Thomas would receive a title and salary change to Administrative Officer I retroactive to October 1, 1985. The government subsequently reneged on this agreement, maintaining that it required the approval and consent of the Governor. In response, the union filed an unfair labor

---

[1] The parties dispute whether Thomas performed the duties of an Administrative Secretary or Officer. There is a difference in salary between the two positions, with the Administrative Officer being the higher paid classification.

practice charge with the Public Employees Relations Board ["PERB"] to enforce the agreement. The union also made a demand for arbitration of Thomas' grievance in February, 1989. (*Id.* at 792.)

In May and June of 1990, the government and Thomas, through the SIU attorney, engaged in settlement discussions. (*Id.* at 755-57.) There is no evidence that the parties were able to reach a settlement. On December 7, 1990, before PERB[2] could address the union's complaint against the government, the arbitrator ruled on the grievance and dismissed it as untimely. (*Id.* at 760-63.)

The parties contested when Thomas first notified the union of her problem and the number of times that she contacted the union about the ongoing problem. Thomas maintained that she first notified the union as early as 1975, whereas the union claimed that it did not receive proper notification until the early 1980s. The parties also disagreed on the characterization of the union's actions concerning Thomas' grievance. Thomas alleged that the union did not pursue her claim; the union countered that it did pursue the grievance but met with resistance from the government that was beyond the union's control.

On August 5, 1991, Thomas filed her complaint against SIU in Territorial Court, alleging that the union breached its obligation to fairly represent her in her grievance against the government. She amended her complaint on April 14, 1993, to include damages for suffering and mental anguish. (*Id.* at 11-15.) At the conclusion of a jury trial conducted in January, 1996, before the Territorial Court, the jury awarded Thomas $95,437.38 as compensation for lost wages and $50,000 for emotional or psychological damages. (*Id.* at 9-10.) The trial court entered judgment of $145,473.38 in favor of Thomas on March 6, 1996. (*Id.* at 4.)

SIU's motion to dismiss pursuant to Rule 50 of the Federal Rules of Civil Procedure at the end of Thomas' case was denied. (*Id.* at 418-23; 427-30.) The union renewed its motion at the close of all the

---

[2] There is no indication in the record or briefs supplied by the parties that PERB ever addressed the issue. SIU's attorney noted during his trial testimony that, per the collective bargaining agreement in place at the time between SIU and the government, arbitration was final and binding and precluded either party from seeking relief in another forum. (App. at 271.)

evidence and the trial court again denied it. (*Id.* at 596-602.) SIU subsequently filed a motion for a new trial, judgment as a matter of law, or in the alternative, remittitur, on January 23, 1996. (*Id.* at 5-7.) In a memorandum opinion issued December 5, 1996, the trial court denied the motion. The union timely filed this appeal on December 9, 1996. (*Id.* at 1-2.)[3]

## III. DISCUSSION

SIU contends that the Territorial Court committed reversible error by denying the union's Rule 50 motion (1) to dismiss Thomas' cause of action as being barred by the applicable statute of limitations, and (2) for judgment as a matter of law because the jury's verdict was not rationally related to the evidence presented at trial. Appellant also asserts that the evidence was insufficient to support the jury's finding that Thomas would have prevailed on her claim against the government for retroactive wages. Finally, SIU argues that the trial court abused its discretion by admitting the tort claim of emotional distress, allowing the testimony of plaintiff's expert, Dr. Chester Copemann, on pain and suffering, and erroneously admitting evidence of settlement offers.

### A. Governing Law

Thomas' claim that the union breached its duty of fair representation is grounded in what has been called a "hybrid claim" developed in federal law governing labor relations between private employees and employers.[4] There is no federal labor statute which similarly regulates labor relations between governmental agencies and their employees. Thomas' claim, therefore, is not directly covered by federal law since she was employed by the

---

[3] According to court records, neither Thomas or her attorney has sought to collect her judgment, which she could have done by filing a writ of execution with the trial court. This option was available to Thomas from the time judgment was entered in Territorial Court in December of 1996, absent the granting of a stay of execution. The record does not indicate, however, that the union ever requested such a stay or that the Territorial Court ever considered or granted a stay. This Court certainly has never granted a stay of execution on the judgment.

[4] *See* Labor Management Relations Act ["LMRA"], 29 U.S.C. § 185. The entire LMRA is found at 29 U.S.C. §§ 141-44, 151-58, 159-67, 171-83, 185-87, 191-97, 557. The LMRA also includes the National Labor Relations Act, 29 U.S.C. §§ 151-68 ["NLRA"].

government and not by a private entity. The Virgin Islands Legislature, however, has enacted a comprehensive statute governing labor relations among local governmental agencies, employees of those public entities, and the unions who represent those employees. This law is the Virgin Islands Public Employee Labor Relations Act ["PELRA"], V.I. CODE ANN. tit. 24, §§ 361-83.[5] We examine the federal labor law from which the federal hybrid claim was fashioned to see whether a similar Virgin Islands "hybrid claim" can be derived from PELRA.

The Supreme Court has distilled the genesis of the claim.

Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301 [of the LMRA], since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.

*DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164-65, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983)(citations and footnote omitted).

The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization "to serve the interests of all members without

---

[5] The Court notes that Thomas' amended complaint claims that the Territorial Court had jurisdiction "pursuant to [the Labor Management Relations Act,] 29 USCA § 141 et. seq., as set forth in 24 V.I.C. § 361." Even on appeal, Thomas' attorney actually continues to argue that "PELRA does not govern this action." (Appellee's Br. at 29.) To the contrary, PELRA does apply and is the only statutory avenue of relief available to Thomas. Since she was a public employee, Thomas cannot recover under the federal act, which only covers private employees. Despite the incorrect statement of jurisdiction in the amended complaint, the union did not object to this characterization of Thomas' claim and the Territorial Court and the parties tried the case as a claim arising under PELRA.

hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." ... The duty stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law."

*Id.* at 165 n.14 (citations omitted).

We note that PELRA has the same objectives for public labor relations in the Virgin Islands as federal labor law has for private labor relations nationwide. For example, the Legislature declared the following to be the "findings and purpose" of PELRA:

It is the purpose of this chapter to provide for orderly and constructive relationships between public employers and their employees. The Legislature finds and declares that the Government of the United States Virgin Islands shall fully accept the principle and procedure of collective bargaining and shall bargain in good faith with valid public employee organizations ....

24 V.I.C. § 361.

PELRA effectuates these objectives by giving public employees the right to organize and "be represented by labor organizations and to engage in collective bargaining with the Government in the determination of the wages, hours, or other terms and conditions of employment and the administration of grievances arising thereunder." *Id.* § 363. The act created the Public Employees Relations Board, *see id.* § 364, which determines the appropriate bargaining unit for particular public employees, *see id.* § 370, regulates the election, and certifies the selected labor organization as the exclusive bargaining representative of the employee bargaining unit, *see id.* § 372. PELRA also sets forth the union's rights and duties that go along with being the exclusive bargaining representative of the public employees, including attending "any conference or hearing involving a member of the unit in which a grievance is being aired" and protecting the interests of the bargaining unit against infringements on its collective bargaining agreement with the employer. *See id.* § 373.

224

■ We find that the scheme of labor relations established under PELRA imposes on the union a duty to fairly represent its public employee members and that section 383 of PELRA is identical in substance to section 301 of the Labor Management Relations Act, the federal labor act, excepting, of course, the language needed in section 301 for federal jurisdiction.[6] We hold that a public employee such as Shirley Thomas has the right to sue her union for breach of the union's duty of fair representation and the government for a breach of the collective bargaining agreement.[7] Thus, Thomas' claim under PELRA is for both a breach of contract against the government for failure to uphold the collective bargaining agreement and against SIU for a breach of the union's duty to fairly represent her under the collective bargaining agreement ["CBA"].

The characteristics of this Virgin Islands claim are the same as the federal hybrid claim.

> "The two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301 ..., but a hybrid § 301/fair representation claim, amounting to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].'"

*DelCostello v. International Bhd. of Teamsters*, 462 U.S. at 164-65 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66-67, 67

---

[6] The full texts of section 383 of PELRA and section 301 of the LMRA are set out in the appendix to this opinion.

[7] *Accord Gomez v. Government of the Virgin Islands*, 882 F.2d 733, 737 n.8 (3d Cir. 1989); *Virgin Islands Nursing Ass'n's Bargaining Unit v. Schneider*, 668 F.2d 221, 223-24 (3d Cir. 1981); *Virgin Islands Police Dep't v. Sergeant's Benevolent Ass'n*, 22 V.I. 119, 122-23 n.2 (Terr. Ct. 1986); *Virgin Islands Water & Power Auth. v. Gastronomical Workers Union*, 20 V.I. 116, 119 (Terr. Ct. 1983).

L. Ed. 2d 732, 101 S. Ct. 1559 (1981) (Stewart, J., concurring in the judgment) (internal citations omitted)). Accordingly, Thomas was required to prove the same case in pursuing her hybrid claim, whether she sued both the government and the union or just one of the two.

■ Thomas chose to sue only the SIU and not the government. As the Supreme Court has stated, "damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." *Vaca v. Sipes*, 386 U.S. 171, 197-98, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967). From this reasoning, and the hybrid nature of the claim, flows the general principle that liability should be apportioned between the employer and the union according to the damage caused by the fault of each. To recover against a union for breach of the union's duty to fairly represent the employee, the employee must prove that the union's conduct was arbitrary, discriminatory, or in bad faith. *See id.* at 190.

## B. Statute of Limitations

The jury found that Thomas' was not barred by the two-year statute of limitations, answering the following question "no": "Do you find that the plaintiff, Shirley Thomas, knew, or by the exercise of reasonable care should have known of the defendant's, Seafarers International Union's, breach of its duty of fair representation two years before August 5, 1991?' (App. at 9 (Jury Verdict Form).) The Court may set aside the jury's findings of fact only if these findings were clearly erroneous. 4 V.I.C. § 33; *see Virgin Islands Port Auth. v. Virgin Islands Taxi Ass'n*, 979 F. Supp. 344, 346 (D.V.I. App. Div. 1997).

The record below supports a finding that Thomas was not aware of her possible claim against SIU until the arbitrator issued his decision on December 7, 1990. From the testimony presented at trial, SIU repeatedly conveyed to Thomas that her claim was being pursued through the grievance process and arbitration, right up until the arbitrator's decision. The arbitrator dismissed Thomas' grievance on December 7, 1990, finding that the grievance had been untimely filed by SIU and noting in particular that the union

had failed to request a waiver of the time requirement. (App. at 763.) The arbitrator even held the union at fault for the dismissal, finding that

> [i]t should have been clear to the Union that nothing further would be offered up by the Government when they promoted the Grievant in 1987. Even if the Union thought, as it claims, that the Government would address the matter further, it should have exercised its rights under the agreement and request a waiver of the time limits as expressed [in the Collective Bargaining Agreement] in force at that time.

*(Id.)*

■ The jury obviously agreed that Thomas was given no indication that SIU was not upholding its duty to fairly represent her until she received the arbitrator's decision. This places Thomas' claim well within the two-year statute of limitations, defeating SIU's contention that her claim was barred. Accordingly, the Court finds that the jury's conclusion was not clearly erroneous.

## C. Jury Verdict Was Rationally Related to the Evidence Presented at Trial

SIU asserts that the trial court improperly denied its Rule 50 motion for a judgment as a matter of law. Specifically, SIU maintains that: (1) Thomas failed to present evidence that supports a finding that the union breached its duty; and (2) Thomas failed to present evidence that supports the jury's award of $95,437.38 in compensatory damages for lost wages.[8] SIU contends that the award is "grossly excessive and not rationally based on the evidence presented at trial." (Appellant's Br. at 18.)

As already noted, Thomas was required to prove that the union's conduct was arbitrary, discriminatory, or in bad faith in order to recover against the SIU for breach of its duty to fairly represent the employee. In this effort, Thomas presented significant evidence at trial supporting the jury's finding that SIU acted in an arbitrary,

---

[8]SIU also challenges the jury's award of $50,000 for emotional damages. This will be addressed below in section III.E.

discriminatory manner or in bad faith when dealing with Thomas' grievance issue. Thomas testified that, beginning in 1975, she repeatedly complained to union representatives about her improper classification as a Clerk Stenographer and was repeatedly told that the union was either "looking into it" or filing a grievance on her behalf. (App. at 60-64.) Union officials then testified that when Thomas' file was examined in 1987 or 1988, there were no grievances in her file. (*Id.* at 197.) Given this evidence, the jury easily could have found that SIU misled Thomas by telling her it was pursuing her grievance when it was not, and therefore breached its duty to fairly represent her.

■ The finding is further supported by the arbitrator's decision concerning the grievance. The arbitrator dismissed the grievance as untimely and noted that SIU had failed to request a waiver of the time requirements as allowed under the parties' collective bargaining agreement. (*Id.* at 763.) Again, this demonstrates SIU's conduct was both arbitrary and in bad faith, amply supporting the jury's findings and verdict.

SIU's challenge to the amount of damages awarded by the jury also fails. The Court should grant a new trial or remittitur only if the "verdict is clearly against the weight of the evidence as to constitute a miscarriage of justice." *Henry v. Hess Oil Virgin Islands Corp.*, 33 V.I. 163, 163 F.R.D. 237, 243 (D.V.I. 1995). More specifically, the "judge must find that no rational jury, acting on the basis of the full evidentiary record, and without being inflamed by passion or prejudice or other improper consideration, could have awarded such a large sum as damages." *Id.; see also Virgin Island Maritime Serv. Inc. v. Puerto Rico Shipping Auth.*, 37 V.I. 193, 978 F. Supp. 637, 648 (D.V.I. 1997) (same). Further, the ruling of the trial court on the question of adequacy of damages will not be disturbed absent a showing of a manifest abuse of discretion by the trial court. *Accord Semper v. Santos*, 845 F.2d 1233, 1236 (3d Cir. 1988) (quoting *Edynak v. Atl. Shipping Inc.*, 562 F.2d 215, 225-26 (3d Cir. 1977)).

■ Under this standard, the jury's verdict in this matter cannot be set aside or reduced. Both Thomas and SIU presented evidence attesting to the amount of wages Thomas would have received if she had been properly classified as an Administrative Officer or

Secretary. Thomas presented the testimony of Ms. Burke, an official within the Personnel Division of the Department of Health. (App. at 298-310; 373-85; 591-93.) Although Ms. Burke may not have been the most prepared of witnesses, she did eventually testify that by her calculations, Thomas had lost approximately $76,249 in wages as a result of being wrongly classified as a Clerk Stenographer. (*Id.* at 377.) Burke reached her conclusion by utilizing government documents and notices of personnel actions ["NOPAs"] and relevant government pay scale tables. Her testimony left room for a substantially larger award by the jury since she was not able to account for such items as bargained-for union salary increases or the impact on retirement amounts. (*Id.* at 375.)

SIU's witness on this issue, Ms. Benitez, Personnel Relations Administrator for the Department of Health, did not offer a definite amount of retroactive wages that were arguably due to Thomas. (*Id.* at 582-90.) Instead, Ms. Benitez testified that such a calculation was impossible without "all the NOPAs, time and attendance, and the HU [related to SIU] pay schedules." (*Id.* at 585.) Not only does the jury's award of $95,437.38 against the union not shock the judicial conscience, it also is sufficiently supported by the evidence.

The Court sua sponte notes another aspect of the damages award stemming from the hybrid nature of the claim, although it was not raised by the parties in the Territorial Court or here on appeal. We already have pointed out that liability should be apportioned between the employer and the union according to the damage caused by the fault of each. We would be justified in concluding that the SIU is satisfied with the trial court's apportionment of damages. The union never raised the issue or submitted an instruction or even objected to the court's proposed instructions on damages and liability. Since the union has questioned the amount of damages, however, we have reviewed the apportionment question for plain error. Since we find that the trial court's instructions adequately guided the jury on the issue of damages,[9] the absence of a separate instruction on apportionment of damages between SIU and the government was not error, much

---

[9]The trial court's jury instructions reasonably covered the need to apportion damages:

less plain error. *See Prosser v. Prosser*, 34 V.I. 139, 144, 921 F. Supp. 1428, 1432 (D.V.I. App. Div. 1996); *Nibbs v. Roberts*, 31 V.I. 196, 222-23 (D.V.I. App. Div. 1995). The jury's award for compensatory damages and the trial court's denial of SIU's Rule 50 motion on this question will be affirmed.

## D. Appellee's Claim Against the Government for Retroactive Wages

Although Thomas chose to sue only the SIU and not the government, she still was required to prove her breach of contract claim against the government. SIU argues that Thomas failed to prove that she would have prevailed on a claim for retroactive wages and damages against the government, which was a crucial precondition to any recovery against the union. In support of this assertion, the union argues that: (1) although Thomas was under a CBA from the time she joined the union in 1974, there was no provision in the CBA until 1981 which would have addressed her problem; and (2) from 1975 to 1980, Thomas was working as an Administrative Secretary and not an Administrative Officer II, a higher paid position. (Appellant's Br. at 13-14.) Accordingly, the union argues, the government could not possibly have breached any contract with Thomas until 1981 at the earliest, restricting the union's liability to 1981 onward. Further, the union contends that the jury's award cannot stand because it did not take into consideration the pay difference between the Administrative Secretary and Administrative Officer positions.

---

If you find that the Union violated its duty of fair representation, you must award an amount that will reasonably compensate said Plaintiff for damages resulting from a lost opportunity to collect from the Government. The measure of damages, if any, is the amount that the Plaintiff would have received if the Union had fulfilled its duty.

...

If you find that Defendant breached its duty as an agent for the Plaintiff, as a fiduciary, you must determine how much damage [s], if any, were proximately caused by such acts or omissions which constituted the breach of duty.

If you find the Plaintiff is entitled to a verdict you may award the Plaintiff only such damages as will reasonably compensate for such injury and damage as you find, from a preponderance of the evidence in the case, that the Plaintiff sustained as a proximate result of the acts of the Defendant.

(App. at 700, 701.) The trial court repeatedly instructed the jury that it could award damages against SIU only for loss caused by SIU, and, therefore, by necessary implication, it could not include any damages resulting from the actions of the government.

230

■ The evidence presented during trial clearly supports the jury's finding that Thomas would have prevailed against the government for retroactive wages for performing the duties of an Administrative Officer II while classified only as a Clerk Stenographer from 1975 to 1987. Evidence was presented that Thomas' grievance could have been brought under a provision allowing the grievance of equal pay issues from 1975 onward. Thomas also presented the testimony of her own supervisor, Leroy Daniel, who had acknowledged the problem of her job classification and directed numerous letters to the government's attention stating the factual bases for correcting the discrepancy. Accordingly, the Court will not disturb the jury's findings on this issue.

### E. Appellant's Claim of Emotional Distress and the Related Testimony of Dr. Chester Copemann

Intentional infliction of emotional distress occurs when a person "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." RESTATEMENT (SECOND) OF TORTS § 6 ["RESTATEMENT"];[10] *see also Codrington v. Virgin Islands Port Auth.*, 33 V.I. 215, 911 F. Supp. 907, 915 (D.V.I. 1996). The conduct must also result in bodily harm. RESTATEMENT § 46.

In *Codrington*, the court found that the Virgin Islands Port Authority's conduct in "failing to take prompt remedial action when notified of [the plaintiff's] harassment ... as a matter of law is simply not the extreme and outrageous conduct to constitute a predicate for the tort of intentional infliction of emotional distress." 911 F. Supp. at 916; *see also Manns v. The Leather Shop, Inc.*, 36 V.I. 214, 960 F. Supp. 925, 930 (D.V.I. 1997) (conduct did not rise to level of outrageous conduct).[11] Accordingly, for Thomas to prevail on a claim of intentional infliction of emotional distress against SIU, the union's "conduct by itself must have been so outrageous and so beyond all bounds of decency to be considered atrocious and

---

[10] In the absence of local laws to the contrary, the rules of common law as expressed in the American Law Institute's restatements of law shall be the rules of decision in courts of the Virgin Islands, including the District Court sitting in its appellate or trial capacity. 1 V.I.C. § 4; 4 V.I.C. § 2.

[11] As there are no previous Appellate Division cases addressing the tort of intentional infliction of emotional distress, the Appellate Division adopts the reasoning of the Trial Division in construing and applying section 46 of the Restatement.

utterly intolerable in a civilized society." *Codrington*, 911 F. Supp. at 916.

The trial court's jury instructions properly informed the jury of this necessary element, stating that "damages for emotional distress may be awarded," but only if the jury found that the "conduct of [SIU] was outrageous." (App. at 704.) The court continued, that, if the jury "found the facts of this case based on evidence not to be outrageous, then you may not consider emotional or psychological damages." (*Id.*)

As a matter of law, SIU's failure to pursue a remedy for Thomas does not rise to the level of outrageous conduct required by the tort of intentional infliction of emotional distress. *See International Islamic Community of Masjid Baytulkhaliq, Inc. v. United States, 37 V.I. 287, 981 F. Supp. 352, 369 (D.V.I. 1997)("The conduct must be extreme and outrageous. It is not enough that the defendant acted with tortious intent or even that he acted with malice."), aff'd,* No. 97-7594 (3d Cir. filed Jan. 5, 1999) (unpublished table decision). This conclusion is supported by rulings of the trial judge. Although choosing to present the instruction on outrageous conduct to the jury, the judge in sidebar discussions acknowledged that outrageous conduct was absent and refused to permit the issue of punitive damages to go to the jury because the union's conduct was not outrageous. (App. at 680.)

Thomas also failed to present sufficient evidence of physical harm suffered as a result of SIU's actions. Thomas' testimony indicates that she started experiencing health problems, oxygen deficiency, and nervousness, in 1993, long after the breach of duty by the union. (*Id.* at 51, 54.) Furthermore, Thomas repeatedly indicated that these symptoms resulted more from the stresses and difficulties of pursuing litigation than from the actions of SIU before she filed the lawsuit. (*Id.* at 51-54.)

The testimony of Dr. Chester Copemann, Thomas' expert witness, does not bolster her claim of physical harm. At best, Dr. Copemann's testimony is ambiguous and unclear on what caused her symptoms. When questioned by the court regarding his opinions concerning a connection between any event in Thomas' life and her illness, Copemann answered that he made "a connection between the ongoing battle ... with the Union." (*Id.* at 335.)

Copemann continued stating that Thomas' symptoms, which Copemann identified as anxiety and depression, resulted from "not being able to get this issue resolved as she contended." (*Id.* at 336.) Thomas cannot recover for a claim of emotional distress on such inarticulate and ambiguous evidence.[12] Thomas' claim for such injuries also fails for the total lack of any evidence of permanent impact, degree of impairment, or tools such as life expectancy tables or economic projections by which the jury could assess the damages, if any. The jury's award of $50,000 thus was purely speculative.

Lacking evidence to support a finding of outrageous conduct by SIU, sufficient evidence to sustain a finding that SIU's actions caused Thomas' injuries, and the absolute failure of Thomas to present evidence regarding the nature and extent of her injury, the jury's award of $50,000 for emotional and psychological distress must be vacated. Furthermore, Thomas failed from the outset to properly plead her claim of intentional infliction of emotional distress. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the plaintiff set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," which gives the defendant proper and fair notice of all causes of action charged by the plaintiff. Thomas never properly alleged the tort of intentional infliction of emotional distress with sufficient clarity, or even as a separate count. Thomas instead included a claim for "suffering and mental anguish" as an aspect of all three counts of her complaint. (App. at 12-15.) This is woefully inadequate for her to recover under the complex and often difficult cause of action of intentional infliction of emotional distress. The Court will not remand the issue for retrial, as this would give Thomas an unfair opportunity to remedy the fatal defect of her complaint and, in effect, require the union to litigate a brand new claim. Moreover,

---

[12] Without evidence of a physical harm resulting from appellant's conduct, appellee also cannot recover under a theory of negligent infliction of emotional distress. *See International Islamic Community*, 981 F. Supp. at 370 ("This Court has required two elements to sustain a claim of negligent infliction of emotional distress. First, the negligent conduct must have placed the plaintiff in danger of his or her own safety. Second, the plaintiff must have suffered some physical harm as a result of the emotional distress." (citing *Mingolla v. Minnesota Mining & Mfg. Co.*, 893 F. Supp. 499, 506 (D.V.I. 1995); and *Lempert v. Singer*, 26 V.I. 326, 766 F. Supp. 1356 (D.V.I. 1995))).

the record is void of any evidence that would support a claim for intentional infliction of emotional distress.

■ Accordingly, this emotional distress matter represents one of those special circumstances in which the appellate court may dispose of an issue fully and finally, rather than return it to the trial court for further proceedings. The outcome is inevitable: Thomas cannot prove a claim for emotional distress. "This course ... [is] dictated by considerations of sound judicial administration, in order to obviate further and entirely unnecessary proceedings below." *Grosso v. United States*, 390 U.S. 62, 71-72, 19 L. Ed. 2d 906, 88 S. Ct. 709 (1968). The trial court will be directed to dismiss the claim with prejudice.

### F. Trial Court's Admission of Evidence Concerning Settlement Discussions

During the course of Thomas' trial, the judge admitted testimony and exhibits describing settlement negotiations that took place between SIU and the government in an attempt to resolve Thomas' grievance. (App. at 85-88; 279-81; 755-57.) The trial court admitted this evidence over the objections of SIU's counsel:

> [The issue] before the jury to decide is whether or not [the union's representation] was competently done or negligently done. The testimony here relates to meetings between the Defendant's agents [and] agents for the Government contracting parties, that is ... an issue the jury has to decide and they should hear the conduct of the parties throughout.

(*Id.* at 87.) Rule 408 of the Federal Rules of Evidence[13] prohibits the admission of evidence of "furnishing or offering or promising to furnish, or accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount" if it is admitted "to prove liability for or invalidity of the claim or its

---

[13] The Federal Rules of Evidence are applicable in proceedings before the Territorial Court, to the extent they are not inconsistent with the Rules of the Territorial Court. TERR. CT. R. 7.

amount." The rule recognizes an exception to this prohibition. Such evidence can be admitted if it is "offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." FED. R. EVID. 408.

The Appellate Division reviews the trial court's decision to admit evidence, if over the objections of a party, for abuse of discretion. *Nibbs v. Roberts*, 31 V.I. 196, 223 n.17 (D.V.I. App. Div. 1995); *Joseph v. Guardian Ins. Co.*, 31 V.I. 145, 149 (D.V.I. App. Div. 1994). The trial judge's ruling admitting the evidence of settlement negotiations between SIU and the government survives this review.

The purpose of Rule 408 is to encourage parties to settle disputes without resorting to litigation. The traditional case for which the rule was designed is where, for example, a plaintiff is barred from presenting evidence at trial that the defendant previously offered the plaintiff $10,000 to settle the claim. To allow this evidence would enable the plaintiff to construe defendant's settlement offer as an admission of liability. Rule 408 prohibits this.

■ This case, however, does not present the traditional scenario. Rather, the evidence admitted concerned settlement negotiations between SIU and the government in which Thomas was not involved. The subject of these settlement negotiations related to Thomas' dispute with the government and not her claim against the union. We already have noted that Thomas had to prove that she would have recovered in a breach of contract action against the government to be able to recover against the union, even though she did not sue the government. Accordingly, the trial judge did not abuse his discretion in admitting the evidence because it was not offered to prove the validity of the claim that was the subject of these settlement negotiations, but rather to show the conduct of the union in pursuing these negotiations. See, e.g., Herman v. City of Allentown, 985 F. Supp. 569, 577 (E.D. Penn. 1997)(allowing admission of evidence of settlement at trial of employee against

government where settlement at issue was between employee's union and government).[14]

## IV. CONCLUSION

As set forth above, the jury's award of compensatory damages in the amount of $95,437.38 was amply supported by the evidence presented at trial. Further, the jury's finding of fact concerning the timeliness of Thomas' complaint was not clearly erroneous. The trial court's admission of evidence concerning settlement negotiations was not an abuse of discretion because it was proper under the exceptions set forth in Rule 408 of the Federal Rules of Evidence. Finally, as a matter of law, the jury's award of $50,000 for emotional and psychological damages cannot be sustained by the evidence presented. Accordingly, the Court will vacate the judgment of the Territorial Court awarding Thomas damages for emotional and psychological distress. Given the evidence presented and the potential unfairness that may result to SIU, the Court will not remand this issue to the Territorial Court but will direct the trial court to dismiss the claim with prejudice. An appropriate order shall issue.

### Appendix

§ 383 of Public Employees Labor Relations Act, V.I. CODE ANN. tit. 24, § 383: **Suits by and against labor organizations**

(a) Suits for violation of contracts between a public employer and an exclusive representative, or between labor organizations, may be brought in any court of this Territory having jurisdiction of the parties, including the Federal District Court, without respect to the amount in controversy or without regard to the citizenship of the parties.

(b) Any exclusive representative of public employees of this Territory shall be bound by the acts of its agents. Any such

---

[14]Even if we were to assume for sake of argument that the trial judge did abuse his discretion in admitting the evidence of settlement negotiations between the union and the government, it would be harmless error. Thomas presented substantial evidence, independent of the settlement negotiations, that the government improperly classified her position, which was sufficient to support the jury's verdict that the government breached its contract. (*See, e.g.*, App. at 57-95 (testimony of Thomas); 393-407 (testimony of Thomas' supervisor, Leroy A. Daniel).)

exclusive representative may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of this Territory, including the Federal District Court. Any money judgment against an exclusive representative in a court of this Territory, including the Federal District Court, shall be enforceable only against the labor organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

(c) The service of summons, subpoena or other legal process of any court of this Territory, including the Federal District Court, upon an officer or managing agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

(d) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

### § 301 of Labor Management Relations Act, 29 U.S.C. § 185: Suits by and against labor organizations

(a) Venue, amount, and citizenship

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of parties.

(b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments

Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district

court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

(c) Jurisdiction

For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

d) Service of process

The service of summons, subpoena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

(e) Determination of question of agency

For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.